**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

_____
:
SHEENA L. MERKMAN AND          :    Case. No. 17-31908 (AMN)
TROY D. MERKMAN              :
           _Debtors_         :    Chapter 7
_____
:
PAUL O. HYNARD,               :
         _Plaintiff_       :    Adv. No. 18-03001 (AMN)
v.                      :
SHEENA L. MERKMAN AND          :
TROY D. MERKMAN,             :    Re: AP-ECF No. 1
         _Defendants_     :
_____
:

## MEMORANDUM OF DECISION AFTER TRIAL

APPEARANCES[1]

_Counsel for the Plaintiff:_         _Counsel for the Defendants:_

_Scott A. Garver_                 _Gregory F. Arcaro_
_21 West Main Street, 4th Floor_     _114 West Main Street, Suite 105_
_Waterbury, CT 06702_          _New Britain, CT 06051_

Paul O. Hynard ("Plaintiff") seeks to except a $17,232.01 debt from the Chapter 7

discharge of Sheena L. Merkman[2] and Troy D. Merkman (collectively, "Defendants")

---

[1]     On May 30, 2019, the United States District Court for the District of Connecticut suspended Attorney Garver for 60 days, retroactively, for the period November 1, 2018 through December 31, 2018. _See In Re Scott A. Garver_, 3:19-gp-00001-VAB (D. Conn. June 11, 2019) (order approving reinstatement). Plaintiff was aware of Attorney Garver's underlying suspension by the State of Connecticut Superior Court and chose to proceed to trial with Attorney Garver as his attorney. AP-ECF No. 29, at 00:02:40. (Note: AP-ECF No. 29 is a PDF file that includes an audio file of a hearing as an attachment. The citation here is to the audio file, commencing approximately two minutes and forty seconds into the hearing.)

[2]     According to Plaintiff, Sheena Merkman was known as Sheena Castle in March 2011 and later changed her last name to Merkman. AP-ECF No. 62, p. 7.

pursuant to 11 U.S.C. § 523(a)(6)[3] on the grounds that Defendants moved out of Plaintiff's rental property at 232 Waterville Street, Unit No. 6, Waterbury, Connecticut (the "Rental Property") without notice and willfully and maliciously damaged and failed to maintain the Rental Property.  Defendants deny Plaintiff's allegations and argue that any damage to the Rental Property occurred after Defendants moved out.

The Court held a trial in this adversary proceeding on April 30, 2019, after which the Court took the matter under advisement.  For the reasons that follow, the Court will deny the relief sought by Plaintiff.

## I.    JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I).  Pursuant to Fed.R.Bankr.P. 7008 and 7012(b), the parties consent to the entry of final orders by the Bankruptcy Court.  AP-ECF Nos. 36, 40.  This adversary proceeding arises under bankruptcy case number 17-31908 (the "Main Case") pending in this District and venue is proper pursuant to 28 U.S.C. § 1409.

## II.    PROCEDURAL HISTORY AND FINDINGS OF FACT

### Procedural Background and Nature of the Proceedings

In 2013, Plaintiff obtained a default judgment against Defendants in the District Court of the Commonwealth of Massachusetts in the amount of $16,755.66 (the

---

[3]    Unless otherwise noted, all statutory references are to Title 11, United States Code (the "Bankruptcy Code").

"Massachusetts Judgment"), which was domesticated to a Connecticut Judgment on January 30, 2015, in the amount of $17,232.01. AP-ECF No. 41. The Massachusetts Judgment is comprised of both contractual and tort damages for damage to the Rental Property and to the Plaintiff.[4]

Defendants commenced the Main Case with a voluntary Chapter 7 bankruptcy petition filed on December 19, 2017. On Schedule E/F, a list of unsecured creditors, Defendants identified an unsecured claim by Plaintiff in the amount of $17,232.01. ECF No. 1, p. 35.[5] On February 28, 2018, Plaintiff commenced this Adversary Proceeding seeking a determination that the debts to Plaintiff are not dischargeable under 11 U.S.C. § 523(a)(6). AP-ECF No. 1. The Court held a trial on April 30, 2019 (the "April 30th Trial"), when both sides presented witnesses and exhibits.

<u>Findings of Fact After Trial</u>

On March 29, 2011, Defendants and Plaintiff executed a residential lease agreement for the Rental Property. The lease was for a term from April 8, 2011, to May 31, 2012.[6] AP-ECF No. 41 (Statement of Undisputed Facts); Ex. 101.[7] The Rental

---

[4]     It appears that $5,403.04 of the Massachusetts Judgment was related to non-payment of rent after deducting the security deposit of $965, that $10,115.41 of the Massachusetts Judgment was related to damage to the Rental Property and $606.12 represented the costs of the legal action to obtain the Massachusetts Judgment. The total of those three calculations is $16,124.57, to which the Massachusetts court added interest from April 1, 2012, to January 28, 2013, to finalize the Massachusetts Judgment at $16,755.66.

[5]     Citations to the docket in Case No. 17-31908 are noted by "ECF No." Citations to the docket in Adversary Proceeding No. 18-03001 are noted by "AP-ECF No."

[6]     The Complaint included an exhibit that indicated Defendants entered into a lease extension from June 1, 2012, to August 30, 2012. However, the exhibit was never entered into evidence and the parties' statement of undisputed facts has a lease end date of May 31, 2012. Thus, the Court will use May 31, 2012, as the end date of the lease rather than the August 30, 2012, end date.

[7]     Plaintiff's exhibits were numbered commencing with 101; Defendants' exhibits were numbered commencing with 501.

Property was clean and undamaged when Defendants took possession.  AP-ECF No. 41.
The Rental Property came furnished with a wall unit air conditioner on the second floor,
a dining room table with chairs, and two chests of drawers.  AP-ECF No. 62, pp. 10-11.

The parties' undisputed facts state that Plaintiff visited the Rental Property in late
June 2012, at which time the Rental Property was not damaged.  AP-ECF No. 41.

Plaintiff's testimony at trial was different from the statement of undisputed facts in
several ways.  Plaintiff testified that he visited the Rental Property twice during the fourth
week of June 2012.  AP-ECF No. 62, p. 22.  On the first visit, a Monday, he observed the
front door ajar, and "damage, like rear kitchen door, damaging the interior door in way of
utility room, and then broken chair."  AP-ECF No. 62, p. 22.  Plaintiff testified that
Defendants were not present, that they had taken out everything except a cooking pot
and some food, but that "the AC was still there" and was turned on.  AP-ECF No. 62, p.
21.  During his second visit in June, on a Thursday, Plaintiff testified that he saw a queen
size mattress, a stand lamp, a blue sofa, "like a flower type design sofa", and love seat
that he claimed Defendants had brought back at some point between Monday and
Thursday.  AP-ECF No. 62, pp. 22, 28.  He also testified that on the second visit both a
window in the kitchen[8] and the air conditioner were broken, and that "the sliding door in
[the] bedroom, they were remove[d]."  AP-ECF No. 62, pp. 22, 29, 44.  On cross-
examination, Plaintiff testified that during the first visit in June he did not see any of
Defendants' furniture or personal effects, and only saw two articles of clothing.  AP-ECF
No. 62, pp. 51-52.

---

[8]     This testimony conflicts with Plaintiff's testimony at an earlier deposition, during which Plaintiff
stated he did not observe a broken window in June. AP-ECF No. 62, pp. 60-62.  During the April 30th Trial,
Plaintiff claimed he was confused by the question during the deposition. AP-ECF No. 62, p. 63.

According to Plaintiff's trial testimony, he visited the Rental Property again in July 2012, and found an unknown woman who appeared to be living in the Rental Property. AP-ECF No. 62, pp. 53-54.   Plaintiff believed that Defendants attempted to sublet the Rental Property to the unknown woman.   AP-ECF No. 62, pp. 67-68.   He also testified that there were more clothes in the Rental Property during his July visit.   AP-ECF No. 62, p. 76 (Trial Transcript).[9]

Plaintiff visited the Rental Property on August 10, 2012, at which time the Rental Property was damaged.   AP-ECF No. 41.   The pictures admitted as evidence at trial, taken by Plaintiff in August 2012, show the Rental Property with a broken rear glass kitchen window, an empty sleeve for a wall air conditioning unit, soiled carpet, damaged kitchen cabinets, unwanted furniture and personal items, and trash throughout the property.   Ex. 102; Ex. 103.

Defendants deny they damaged the Rental Property or brought any of their belongings back to the apartment.   AP-ECF No. 62, pp. 82, 90-91.   They also deny allowing any third-party access to the apartment.   AP-ECF No. 62, pp. 83-84, 91.   Instead, Ms. Merkman testified that when Defendants moved out of the Rental Property, they locked the door and left the keys on the kitchen table.   AP-ECF No. 62, p. 88.[10]   Ms.

---

[9]    Question:  My question was: What was the condition of the apartment or the condo on July 2nd?
Mr. Hynard: Okay. It wasn't -- it gets more stuff from the – some more personal, her clothes, from that person that she --  Sheena Castle or Troy Merman --
Question:  So --
Mr. Hynard: -- try to rent it out to her then.

[10]    Question: And did you bring the keys back to him when you moved out?
Ms. Merkman: I left the keys there when I moved out.
Question: Yeah. You left the keys on the kitchen counter?
Ms. Merkman: Kitchen table.
Question: Kitchen table. Why didn't you give them back to him?
Ms. Merkman: I told him I would leave them there and lock the door and left and that's what I did. I can't give him the keys if he didn't answer the phone.

Merkman also testified that she left two or three voicemails for Plaintiff but did not send any written notices.  AP-ECF No. 62, p. 86.[11]  While Plaintiff denies receiving any voicemails from Defendants regarding their move-out date, Plaintiff admitted he has a voice message machine but does not use it.  AP-ECF 62, pp. 98-99.

Defendants testified that they moved into a new apartment on May 28, 2012, and did not return to the Rental Property after that date.  AP-ECF No. 62, pp. 81-82, 90-91. Defendants executed a lease on a new apartment with a separate landlord on June 1, 2012, with a lease beginning that same day.  AP-ECF 62, pp. 80-81; Ex. 501 (signed lease agreement).  Defendants admitted leaving the blue floral pattern couch and a matching armchair when they moved out.  AP-ECF 62, pp. 82, 84-85.[12]  There is no evidence that Defendants returned to the Rental Property after May 31, 2012.  Plaintiff testified that he did not know the exact day Defendants moved out of the Rental Property, but claimed it was "[a]round the end of July or beginning of August."  AP-ECF No. 62, pp. 10-11, 17.  Plaintiff admitted that he did not witness Defendants damage the Rental Property.  AP-ECF No. 62, pp. 68-72.

---

[11]    Question: You indicated you left two or three voicemails for Mr. Hynard about your -- that you were moving out?
    Ms. Merkman: Yes.
    Question: Did you send him any written notice?
    Ms. Merkman: No.
    Question: Did you indicate to him where you were going?
    Ms. Merkman: No, I did not.

[12]    Question: Okay. When you left Mr. Hynard's apartment, did you bring all of your belongings with you?
    Ms. Merkman: We brought all of our belongings except for a couch.
    Question: Okay. And what was the color of the couch?
    Ms. Merkman: White and blue.
    Question: Okay. And why did you not bring that with you?
    Ms. Merkman: It was old and it wasn't really worth the money it would have cost us to move it to the new apartment.

## III.    APPLICABLE LAW

### Burden of Proof

Exceptions to discharge "are strictly and narrowly interpreted so as to promote the Bankruptcy Code's purpose of providing a fresh start to debtors." *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011); *In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir. 1996). "Furthermore, the burden of proof in a nondischargeability proceeding is on the creditor seeking an exception to discharge to prove, by a preponderance of the evidence, that its claim satisfies the requirements of one of the discharge exceptions enumerated in Bankruptcy Code § 523(a)." *Vaughn v. Williams (In re Williams)*, 579 B.R. 314, 323 (S.D.N.Y. 2016) (citation omitted); *see also Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Giminiani v. Cesar*, 536 F.App'x. 85, 87 (2d Cir. 2013) ("To warrant an exception from discharge, a creditor must prove each statutorily enumerated element of fraud by a preponderance of the evidence.") (summary order).

### Nondischargeability Under 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The requirements of 'willfulness' and 'maliciousness' are distinct requirements in the statutory text and are usually treated as such by the courts." 4 Collier on Bankruptcy ¶ 523.12. This exception to discharge requires a plaintiff to prove three elements: (1) "debtor acted willfully," (2) "debtor acted maliciously," and (3) "debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property." *In re Margulies*, 721 F. App'x 98, 101 (2d Cir. 2018).

"The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or

7

intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). "The Supreme Court has rejected an expansive interpretation of § 523(a)(6), analogizing, that while 'intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic' is itself an intentional act, the resulting injury of an innocent bystander is not intentional, and therefore, not 'willful' to render the debt non-dischargeable under § 523(a)(6)." *Heritage Equities, LLC v. Newman (In re Newman)*, 588 B.R. 281, 298 (Bankr. D. Conn. 2018) (citing *Kawaauhau*, 523 U.S. at 61-62). "*Kawaauhau* further rejected the notion that a debt arising from a mere 'knowing breach of contract,' absent more, would qualify as 'willful' under the statute." *In re Newman*, 588 B.R. at 298 (citing *Kawaauhau*, 523 U.S. at 61-62); *see also In re Picard*, 339 B.R. 542, 554 (Bankr. D. Conn. 2006) (citing cases involving breach of contract wherein debts were held dischargeable absent tortious conduct).

A plaintiff must further prove its debt resulted from a debtor's "malicious" actions, and that they acted "wrongful[ly] and without just cause or excuse." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996)). "[M]alice may be easily deduced where the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor." *Syncom Industries, Inc. v. Wood (In re Wood)*, 488 B.R. 265, 280 (Bankr. D. Conn. 2013) (internal quotations omitted). "Malice requires conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies." *Econ. Dev. Growth Enters. Corp. v. McDermott (In re McDermott)*, 434 B.R. 271, 283 (Bankr. N.D.N.Y. 2010).

8

In cases of landlord-tenant disputes, a debt is still dischargeable even if the defendants, "left the [p]laintiff's property in a condition that was reminiscent of scenes from the movie 'Animal House.'"[13]  *Knowles v. McGuckin (In re McGuckin)*, 418 B.R. 251, 256 (Bankr. N.D. Ohio 2009).  "Since *Kawaauhau v. Geiger* […] it has been recognized that a debtor's negligence in failing to maintain a rental property will not be, without more, sufficient to support a claim of nondischargeability under 11 U.S.C. § 523(a)(6)."  *In re McGuckin*, 418 B.R. at 256.  "In this regard, persons intending to cause harm do not normally do so by passive acts, such as failing to properly clean and maintain another's property.*"  In re McGuckin*, 418 B.R. at 256 (citing *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1181-82 (8th Cir. 2008)).  "Instead, the specific intent standard espoused in *Kawaauhau v. Geiger* will normally be accompanied by overt acts, or something closely akin thereto — e.g., purposely failing to act in order to produce a desired consequence.*" In re McGuckin*, 418 B.R. at 256 (citing *In re Patch*, 526 F.3d at 1181-82).

Numerous bankruptcy courts hold that "a debtor's failure to maintain rental property or collateral, without more, is not enough to support a claim of nondischargeability under 11 U.S.C. § 523(a)(6)."  *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723-24 (Bankr. N.D. Ill. 2002) (collecting cases).  Some examples include:

- *Smith v. Burgos (In re Burgos)*, No. 15–1020–WHD, 2015 WL 9435398, 2015 Bankr. LEXIS 4311, at *8-9 (Bankr. N.D. Ga. Nov. 9, 2015) (holding on "its own, evidence of burnt countertops, stained carpets, and crayon on the walls can be proof of utter recklessness or deplorable apathy, but without an allegation that the Debtors had a motive to cause her injury, acted with intent to injure, or acted with the knowledge that their conduct would inflict injury, the plaintiff cannot prevail under the narrow exception found in § 523(a)(6).");

- *Leneski v. Smith (In re Smith)*, No. 07–14, 2007 WL 4510309, 2007 Bankr. LEXIS 4148, at *17 (Bankr. N.D.W. Va. Dec. 18, 2007) (concluding that "[a]t

---

[13]     *See* National Lampoon's Animal House (Universal Pictures 1978).

9

worst, the actions of the Debtors in failing to maintain the backyard, failing to remove all items of personal property and trash from the premises, and in failing to turn over a clean house were negligent, or even reckless, but the court cannot find, based on the evidence presented, that the Debtors actions were intentionally directed at [the plaintiff] in an effort to cause him financial harm.");

- *Sanders v. Banks (In re Banks),* No. 05-4384-659, 2007 WL 489139, 2007 Bankr. LEXIS 481 at *3-4, 8-9 (Bankr. E.D. Mo. Feb. 12, 2007) (concluding that the debtor did not act maliciously when the debtor left the property "in disarray with hinges taken off several doors, several spots on the carpet, a broken window, . . . cabinets . . . off their hinges, paint splotches on the bathtub and [with] . . . trash left throughout the Property.");

- *Lilledahl v. Kibbee (In re Kibbee),* 287 B.R. 239, 244 (Bankr. E.D. Mo. 2002) ("Although the Court empathizes with Lilledahl that his house was not left in good condition, the cost of repairing and cleaning up the premises is not the kind of injury contemplated by section 523(a)(6).");

- *Sparks v. King (In re King),* 258 B.R. 786, 797 (Bankr. D. Mont. 2001) (holding that leaving personal property and trash in a rental unit was not a willful and malicious injury under § 523(a)(6), nor was the fact that the debtor punched holes in the walls with his fist when that act was not done with the purpose of causing harm to the landlord);

- *Wells v. Jennings (In re Jennings)*, 188 B.R. 110, 114 (Bankr. E.D.N.Y. 1995) (even though the dangerous and unsafe condition of the debtor's property might have caused the fire that damaged a neighbor's property, the debtor was merely negligent in the care and maintenance of her property);

- *Mathes v. Woolner (In re Woolner)*, 109 B.R. 250, 255 (Bankr. E.D. Mich. 1990) (mortgagee's loss caused by the debtor's improper maintenance of his farm prior to foreclosure was not a debt arising from willful and malicious conduct; rather, the debtor's conduct was negligent)

- *Ross v. DeVier (In re DeVier)*, 57 B.R. 602, 606 (Bankr. E.D. Mich. 1986) (a state court judgment for damages to a rented home could have been based on negligence, rather than intentional and malicious injury).

In each of the cases, "the determining factor was the court's conclusion that the debtor's conduct was negligent, rather than intentional.   Debts based on negligence are

dischargeable. Debts based on willful and malicious conduct are not." *In re Lazzara*, 287 B.R. at 724 (citing *Kawaauhau*, 523 U.S. at 64).

The few cases that found for a plaintiff under § 523(a)(6) in landlord-tenant cases found that defendants willfully and maliciously removed fixtures and caused significant damage to the property. *See Selzer v. Alderson (In re Alderson),* No. A03–4059, 2004 WL 574134, 2004 Bankr. LEXIS 154 (Bankr. D. Neb. Feb. 11, 2004) (finding a malicious injury to rental property when the debtor, *inter alia,* removed fixtures, damaged electrical wiring, pounded holes in walls, tore off wallpaper, spray-painted the furnace and other appliances, and sawed-off a kitchen counter); *Showe Mgmt. Corp. v. Kerr (In re Kerr)*, 383 B.R. 337, 339-340 (Bankr. N.D. Ohio 2008) (finding willful and malicious injury to rental property when the debtor removed the "stove, dishwasher, refrigerator, kitchen cabinet doors, shelving, drawers, microwave oven, missing drawer knobs, missing doors and door hardware, missing closet rod, missing light fixtures throughout, missing window screens, missing T.V. wall bracket (leaving a damaged wall), missing sliding door on shower, missing sink hardware, missing shower rod, missing plate covers for electrical outlets.").

## IV.    DISCUSSION

Here, Plaintiff Paul O. Hynard failed to establish the damage to the Rental Property and to him was the result of "willful and malicious injury" rather than a knowing breach of contract, as required for the debt to be nondischargeable.  11 U.S.C. § 523(a)(6).  The evidence presented is insufficient to support a finding that Defendants willfully caused the damage to the Rental Property observed by Plaintiff, let alone that Defendants caused said damage with malicious intent.  Even if the Defendants did cause the alleged damage,

there is no evidence to determine that such conduct was intentional, rather than negligent. *See, In re Lazzara*, 287 B.R. at 724 ("Debts based on negligence are dischargeable. Debts based on willful and malicious conduct are not.").

During the April 30th Trial, Plaintiff failed to present affirmative evidence showing that Defendants returned to the Rental Property in June 2012, or later, when most of the observed damage occurred. Defendants testified that they did not return to the Rental Property after May 28, 2012. AP-ECF No. 77, pp. 109, 116. Plaintiff admitted at trial that he never saw Defendants damage his property. Other than Plaintiff's testimony at trial, which was unpersuasive and often contradictory, Plaintiff presented no evidence to support his contention that Defendants returned to the Rental Property in June 2012 with the blue floral pattern couch, broke the kitchen window and removed the air conditioning unit.

Additionally, Plaintiff's own testimony failed to establish Defendants' personal property remained in the house during his first visit in June 2012. AP-ECF No. 62, pp. 51-52. He further testified that the window was broken by the time of his second visit in June 2012. AP-ECF 62, p. 29.[14] The court concludes that the inference that Defendants willfully and maliciously returned to damage the property is too remote to carry his burden of proof under § 523(a)(6), especially given the length of time between when Defendants moved out and when Plaintiff reclaimed possession of the Rental Property.

Furthermore, Plaintiff's testimony regarding his observation that another woman was living in the Rental Property in July 2012 represents a plausible intervening cause of the damage. Plaintiff testified that he spoke to a woman living in the Rental Property

---

[14]    Question: When did you notice the broken window?
        Mr. Hynard: The same day on Thursday.

shortly after he observed the damage to the window and the air conditioning unit.  AP-ECF No. 62, pp. 53-54.  Defendants testified that they did not permit anyone else to stay at the Rental Property.  AP-ECF No. 62, pp. 83-84, 91.  Plaintiff failed to present evidence that Defendants somehow invited the unknown woman to live at the Rental Property and possibly caused the observed damage.  Nor did Plaintiff argue how any damage caused by the unknown woman would satisfy the requirements of Section 523(a)(6) even if Defendants invited her to stay at the Rental Property.  *See In re Melcher*, 319 B.R. 761, 777 (Bankr. D.D.C. 2004) ("injury done by a debtor's agent, and not by the debtor, but imputed to a debtor under nonbankruptcy law, fails to satisfy § 523(a)(6) because the injury must be 'by the debtor.' ") (citation omitted).

Assuming, *arguendo*, that Defendants themselves caused all the damage to the Rental Property, the evidence is still insufficient to support a denial of discharge under Section 523(a)(6).

Plaintiff's arguments do not support a finding that the damage to the Rental Property could rise to a willful injury, rather than a mere breach of contract.  Leaving a rental property in a messy and disorderly state, without more, does not rise to the willful and malicious injury contemplated by Section 523(a)(6).  *See In re McGuckin*, 418 B.R. at 256; *In re Lazzara*, 287 B.R. at 724.  Even breaking a window fails to satisfy Section 523(a)(6)'s narrow discharge exception.  *See Kuan v. Lund (In re Lund)*, 202 B.R. 127, 130 (B.A.P. 9th Cir. 1996) (Upholding finding that damage, including broken windows and holes in drywall, might have been performed unintentionally); *In re Banks,* No. 05-4384-659, 2007 Bankr. LEXIS 481 at *3-4, 8-9 (concluding debtor did not act maliciously when property left with a "a broken window").

13

Plaintiff also failed to offer evidence that Defendants' possessed the requisite malicious mental state.  The only evidence of Defendants' mental state is their admission during the trial that they did not like Plaintiff and vacated the apartment without providing written notice.  AP-ECF No. 62, pp. 86,[15] 92.[16]  However, this does not establish by a preponderance of the evidence that Defendants' "motivation must have been to inflict harm upon" Plaintiff.  *In re Wood*, 488 B.R. at 280 (Bankr. D. Conn. 2013).  Although Defendants admitted leaving the blue floral pattern couch when they moved out, Ms. Merkman testified that they left the couch because it "was old and it wasn't really worth the money it would have cost us to move it to the new apartment."  AP-ECF 62, p. 82. For an act to be willful and malicious under Section 523(a)(6), it must be more than selfish and ill mannered.

Based on the evidence presented I cannot conclude that Defendants willfully damaged Plaintiff's Rental Property.  Even assuming Defendants did cause such damage, there is insufficient evidence to support the conclusion that the damage was malicious and directed at Plaintiff in an effort to cause him financial harm.

---

[15]    Question: Did you indicate to [Mr. Hynard] where you were going?
Ms. Merkman: No, I did not.
Question: Why not?
Ms. Merkman: Because he was not a nice -- he just seemed mentally not there and I didn't want him to have my address.
Question: You said he was not a nice person? Is that what you said?
Ms. Merkman: Well, I mean, he used to call me excessively, so I didn't want him to know where I was moving.

[16]    Question: Did you give Mr. Hynard your new location, your new address?
Mr. Merkman:  No.
Question: Why not?
Mr. Merkman:  Wasn't a nice person.
Question: You don't think he was a nice person?
Mr. Merkman:  No.

**CONCLUSION**

For these reasons, I conclude that Plaintiff failed to carry his burden of proof to sustain Defendants willfully and maliciously damaged his Rental Property as contemplated by 11 U.S.C. § 523(a)(6).  A separate judgment in favor of Defendants will enter.

Dated on July 31, 2019, at New Haven, Connecticut.

Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut